UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.B. and J.B., individually and on behalf of E.B.,<br><br>Plaintiffs-Appellants,<br><br>-against-<br><br>City School District of the City of New York, d/b/a/ the New York City Department of Education,<br><br>Defendant-Appellee. | **COMPLAINT**<br>25-cv-1090<br>**ECF CASE** |

Plaintiffs M.B. and J.B., individually and on behalf of E.B., by their attorneys, Regina Skyer & Associates, L.L.P., as and for their Complaint allege and state the following:

## PRELIMINARY STATEMENT

1.  Plaintiffs M.B. and J.B., on behalf of their child, E.B., bring this action pursuant to Section 1415(i)(2) of the Individuals with Disabilities Education Improvement Act ("IDEA"), as amended (20 U.S.C. § 1400 *et seq.*), the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education Law, and Part 200 of the Commissioner's Regulations against the New York City Department of Education (the "DOE"), seeking review and reversal of the State Review Officer's ("SRO") decision dated October 7, 2024. (Exhibit *1[1])

2.  E.B. is currently a 9-year-old student who presents with a history of challenges related to language-based learning and attention/executive functioning coupled with social-

---

[1] Consistent with the usage below, exhibits preceded by an alphabetic reference were exhibits introduced by E.B.'s parents at the IHO hearing. Numerical exhibits were introduced by the DOE. Citations beginning with "Tr." indicate pages within the transcript of the hearing before the IHO. Starred exhibits have been attached to this Complaint.

1

emotional vulnerabilities. (Exs. C, D). E.B. attended P.S. 340 in Manhattan for first and second grade (Ex. N-1, N-2). E.B. was initially placed as a general education student in an Integrated Co-Teaching ("ICT") class in first grade (Ex. N-1). During her first-grade year, E.B. displayed difficulties complying with expectations and controlling her impulses and was consistently functioning below grade level (Exs. N-1, M-2). Persistent concerns were noted with her acquisition of language-based learning skills (Ex. N-1, N-2). E.B.'s first grade teachers believed E.B. should have been a special education student with an IEP in the ICT class, however, P.S. 340 never initiated any evaluations or the IEP process for E.B. (Ex. N-2).

3. E.B. presents with challenges in language-based learning and attention and executive functioning, couples with social-emotional vulnerabilities. On June 24, 2024, after a 90-minute hearing during which time the DOE made no opening statement, presented no witnesses or testimony and simply entered documents into the record, Impartial Hearing Officer ("IHO") Olivia Sohmer determined that the DOE had provided E.B. with a free appropriate public education ("FAPE").

4. The IHO issued a decision, which was replete with speculative findings that had no support in the record. Despite the absence of any witness testimony regarding how the ICT program could meet E.B.'s needs for the 2023-2024 school year, the IHO determined that the DOE sustained its burden that it provided a FAPE (IHO Dec. 7).

5. The IHO failed to consider the appropriateness of the Parents' selected placement and summarily denied the Parents' request for reimbursement of the tuition paid by the Parents.

6. The Parents timely appealed the IHO's decision. The gravamen of the appeal was the appropriateness of the DOE's proposed program and placement. The SRO, based solely on the documentary evidence, upheld the IHO's Findings of Fact and dismissed the Parents' appeal.

2

7. Through this action, Plaintiffs seek a determination that:

   a. The DOE failed to provide E.B. with a FAPE for the 2023-2024 school year;

   b. E.B.'s placement at the Windward School, was an appropriate placement for E.B.;

   c. The equities favor E.B. and thus require that the DOE reimburse E.B.'s parents for the costs incurred to educate E.B.; and

   d. That E.B. is entitled to any other further relief as may be just under the circumstances.

## JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 20 U.S.C. § 1415(i)(2)(A) and (3)(A). This Court has supplemental jurisdiction over any state law claims herein asserted pursuant to 28 U.S.C. § 1367, as such state law claims form part of the same case or controversy as the claims for which this Court has original jurisdiction.

9. Venue is proper under 28 U.S.C § 1391(b) because the parties reside in this judicial district.

10. If successful, Plaintiffs are entitled to costs and attorneys fees under 42 U.S.C. § 1988(b) and 20 U.S.C. § 1415(i)(3)(B) *et seq*.

## PARTIES

11. Initials are used throughout this Complaint to preserve the privacy and confidentiality of the child, E.B., and the family consistent with the privacy provisions promulgated under section 1417(c) of the IDEA, and the Family Education and Privacy Rights Act, 20 U.S.C. § 1232(g).

12. Plaintiffs M.B. and J.B. are the parents of E.B. They reside in New York, New York.

13. Defendant DOE is a corporate body, created by Article 52 of the New York State Education Law, CLS Educ. Law § 2550 *et seq.*, that manages and controls the public school system of the City of New York. On information and belief, the DOE receives funding pursuant to the IDEA, and therefore must comply with that statute's provisions, including providing a FAPE to all students with educationally handicapping conditions, including E.B., who reside within New York City. *See* 20 U.S.C. § 1412. The DOE's principal place of business is 52 Chambers Street, New York, New York 10007.

## FACTUAL ALLEGATIONS

### E.B.'s Disability and Its Educational Impact

14. E.B. attended P.S. 340 in Manhattan from first through second grade (Ex. N-1, N-2). E.B. was placed as a general education student in an Integrated Co-Teaching ("ICT") class in first grade (Ex. N-1). During her first-grade year, E.B. displayed difficulties complying with expectations and controlling her impulses and was consistently functioning below grade level (Exs. N-1, M-2). Persistent concerns were noted with her acquisition of language-based learning skills (Ex. N-1, N-2). E.B.'s first grade teachers believed E.B. should have been a special education student with an IEP in the ICT class, however, P.S. 340 never initiated any evaluations or the IEP process for E.B. (Ex. N-2).

15. E.B.'s parents advocated keeping E.B. in an ICT class for second grade (Ex. N-2). During her second-grade year, E.B.'s teachers reported that E.B. was falling behind and struggled to catch up, that she frequently needed small group and 1:1 support during class, and that she was

4

below grade level standards in ELA and math (Ex. N-2). Due to E.B.'s ongoing struggles, her parents initiated an independent neuropsychological evaluation in November 2022 (Ex. C). E.B.'s teachers reported to the neuropsychologist that E.B. was below grade level standards in ELA and math and they were concerned with her confidence in an academic context. (Exs. C-10, M-3). E.B.'s teachers further reported that she required the support of both teachers in the classroom and frequently needed small group instruction, and, even with that level of support, they had concerns about her progress and acknowledged lags in her functioning (Ex. C-10, C-11, Ex. M-3).[2]

16.     On objective testing measures, E.B. displayed weaknesses in the majority of her language-based skills including sight word recognition, phonetic decoding and overall fluency as well as weaknesses in spelling and written expression (Exs. C-12, M-3). E.B. was diagnosed with Specific Learning Disorder with Impairment in Reading (Dyslexia); and Written Expression (Ex. C-14). E.B. exhibited characteristics of ADHD, anxiety and emotional dysregulation. (Ex. C-14). The neuropsychological evaluation recommended that E.B. be given an IEP with the classification of Learning Disability (*Id.*). The evaluator cautioned that E.B. had already been receiving the benefits of being in an ICT classroom and that she nevertheless remained behind academically (Ex. C-14). It was recommended that in addition to ICT she receive daily Special Education Teacher Support Services ("SETSS") small group instruction with an Orton-Gillingham ("OG") trained provider to address her language-based skill development as just the formalization of ICT

---

[2] The IHO erroneously found that the hearing record established that for all but the last 4 months of the two years that E.B. was in an ICT class, she was a general education student without special education supports (IHO Dec. 10). The record in fact establishes the exact opposite. The neuropsychologist interviewed E.B.'s teachers who documented that E.B. required the support of *both* teachers in the classroom, the small group and 1:1 instruction as well as additional scaffolding and following a simpler rubric, and that although her formal status was as a general education student, the ICT class support was crucial for E.B. to function in school (Ex. C-10, C-11).

supports on an IEP would not be enough to address the deficits found in the testing in school (Exs. C-14; M-3).

17.     E.B.'s parents requested an initial IEP meeting from P.S. 340 and participated in a social history evaluation on January 6, 2023 (Ex. 1-17). E.B.'s parents signed consent for the DOE to conduct evaluations on January 10, 2023 (Ex. 1-17). On February 2, 2023, a classroom observation was conducted in E.B.'s second grade ICT classroom and it was reported that E.B. had difficulty following directions, required a lot of 1:1 support, and had a hard time socializing with peers (Ex. 3-1). No other evaluations were conducted on E.B. by the DOE.

18.     An initial IEP meeting was held on March 1, 2023. No objective scores were reported on the IEP, only teacher-based assessments (Ex. 5-1, 5-2). The IEP team formalized E.B.'s placement in an ICT class for ELA, math and social studies, with group-based counseling. (Ex. 7-1).[3] The IEP team did not recommend SETSS. Concerned about the further lack of progress, E.B.'s parents provided E.B. with private OG tutoring twice per week outside of school (Ex. N-2).

19.     At the March 1, 2023 IEP meeting, the Parent expressed concerns over the fact that the IEP recommendation would just be formalizing the supports E.B. had been receiving from P.S. 340 for a year and half, and, that even with the provision of private OG tutoring outside of school, E.B. was still below grade level and not progressing (Ex. N-3). At this meeting, E.B.'s teachers

---

[3] On June 16, 2023, the IEP team removed counseling from E.B.'s IEP at the parent's request (Ex. 10). Parents did not challenge the removal of counseling as a procedural denial of FAPE as the IHO insinuated in her decision (IHO Dec. 8). Parents requested the removal of counseling and indicated that they would be providing it privately outside of school (Ex. 10-1). The IHO also erroneously indicated in her decision that the parent's only basis for contending that E.B. was denied a FAPE for the 2023-2024 school year was because the District failed to reconvene an IEP meeting during the summer of 2023 and offer a different placement consistent with the recommendations in the Neuropsychological re-evaluation (IHO Dec. 6). The IHO inherently ignored or misunderstood the array of claims made in the Parent's Due Process Complaint. The parent's full challenges as to the denial of FAPE are articulated clearly in their Due Process Complaint (Ex. A).

6

reported that she was having difficulty with managing her time, sustaining attention, transitioning between activities, social awareness, and coping skills and that she required small group and 1:1 instruction in writing and math (Ex. N-3). At the IEP meeting, the Parent also questioned what additional supports could be put in place to aid in E.B.'s instruction given her dyslexia diagnosis and the school psychologist informed the Parent that there were none (Ex. N-3). None of these concerns are articulated or documented in E.B.'s IEP (*see* Ex. 5).

20. Due to their concerns over E.B.'s continued struggles following the IEP meeting, her parents had E.B. reevaluated by an independent neuropsychologist (Exs. D, N-3). E.B.'s mother emailed the Principal of P.S. 340 on June 27, 2023 to inform her of this evaluation and share that, after conducting tests, the evaluator was recommending that E.B. be placed in a full-time special education program using a full-time multi-sensory approach to teaching (Ex. E). The Principal responded on July 6, 2023 that E.B.'s IEP needed to be reopened as a reconvene and that a DOE summer team would contact the parents to start the process (Exs. E, N-3).[4] The DOE never contacted the parents to schedule a new IEP meeting (Ex. N-3).

21. On August 15, 2023, the Parents provided the DOE with notice that they intended to place E.B. at Windward unless the DOE was amenable to curing the deficiencies inherent in the IEP (Ex. B). On August 16, 2023, the parent personally notified the Principal at P.S. 340 that based upon the recommendations of the updated independent evaluation, they would be sending E.B. to Windward for the 2023-2024 school year (Ex. N-3). The Parents received no response to these notifications, and, on January 8, 2024, they requested an Impartial Hearing (Ex. A).

---

[4] The IHO made an incorrect factual finding in her decision when she referenced this exchange and stated that the "Parent was assured that the CSE would reconvene *once* they could review the report" (IHO Dec. 8). The actual email in evidence does not say this and instead informs the parents that the Parents would be contacted by someone at the DOE to start the reconvene process (Ex. E-1).

7

**Proceedings Before the Impartial Hearing Officer**

17. A Pre-Hearing Conference was scheduled for February 16, 2024 to discuss the matter and determine the issues and determine whether there was a dispute as to the allegations contained in the Parents' Due Process Complaint.

18. The DOE's attorney failed to attend this Pre-Hearing Conference.

19. IHO Sohmer conducted an impartial hearing over one single day on April 10, 2024.

20. While the IHO recognized that the DOE bears the burden of proof to establish the appropriateness of the IEP and placement recommendation, the IHO did not hold the District to its burden.

21. It was incumbent upon the DOE to establish and explain, *inter alia*, what the recommended special education program encompassed and how it could meet E.B.'s individualized needs. The DOE was required to amplify and reveal what the IEP intended in terms of whether individualized support, if any, would be provided to E.B. in order to enable her to make meaningful progress. The DOE presented no evidence whatsoever to explain how the terms of the IEP were reached insofar as E.B.'s needs are concerned.

22. While the DOE informed the Hearing Officer and the Parents' Counsel that it would present the testimony of one witness to discuss the IEP meeting and the program recommended for E.B., the DOE failed to present any witness testimony at hearing and there was no opportunity for the Hearing Officer to learn how the recommended special education program was developed or for the Parents to question any DOE witnesses as to how the CSE arrived at its determination. Thus, there was no opportunity for the Parents to inquire about, and require, a cogent explanation for the DOE's actions in regard to their child's educational program.

23. The uncontested allegations contained within the Due Process Complaint and the DOE's failure to justify the terms of the IEP violated the mandate by the United States Supreme Court that a school district has to do significantly more than what the DOE did in the present matter, which was to rely solely on a series of unexplained documents (*see Endrew F. v. Douglas County School Dist. R.E.-1*, 580 U.S.__ (2017). As the SRO declared in *Application of a Student with a Disability*, Appeal No. 23-054, "absent from the hearing record is any articulation of the [DOE's] rationale for its recommendation."

### The State Review Officer's Decision

24. The Parents timely appealed IHO Sohmer's decision to the State Review Officer.

25. On October 7, 2024, State Review Officer Justyn Bates issued a decision upholding the Findings of IHO Sohmer.

26. The SRO erred in concluding that "the record evidence supports the IHO's determination that the district offered the student a FAPE for the 2023-2024 school year…" SRO Decision at 19. The SRO's determinations on this issue are arbitrary and capricious and not supported by the record below.

27. The SRO erred in determining that the "hearing record does not indicate that the district was obligated to reconvene the CSE for an IEP meeting in summer 2023, as there is no evidence that the district received an affirmative request to reconvene the CSE to revise the student's IEP based on new information or new evaluative information for the CSE's consideration." Ex. *1 at 8.

28. The SRO erred in finding that the District's failure to schedule a summer IEP meeting was not a violation of the IDEA.

29. On June 27, 2023, the parent emailed the P.S. 340 School Principal to inform her that E.B. had just been reevaluated and that the evaluator was recommending E.B. be placed in a small, full-time special education program that uses an evidence-based multi-sensory approach to teaching (Ex. E.).

30. The Principal responded on July 6, 2023 and informed the parent that E.B.'s IEP needed to be opened as a reconvene which could be done by a DOE summer team (Ex. E).

31. The Principal copied a DOE supervisor of psychologists on this email and informed the parents that he would contact them to start the process of convening an IEP meeting (Ex. E).

32. The parents were never contacted by the supervisor or anyone else to start the reconvene process (Ex. N-3).

33. Federal and New York State Law provide that, upon referral by a parent, the district has 60 days to conduct all required evaluations, convene a review, and issue a recommendation of placement (20 U.S.C. § 1414 (a)(1)(C)(i)(I); 34 C.F.R. §300.301 (c)(1)(i); 8 NYCRR §200.4 (d); 8 NYCRR §200.4 (e)).

34. Despite the clear language of the regulation and that the District does not require the Parents to use any "magic words" in their referral, the SRO inappropriately concluded that the District was not obligated to schedule a meeting before receiving any new material from the parents (Ex. *1 at 8), shifting the burden onto the Parent.

35. As per the regulations, if the DOE felt that the parent's written request did not warrant a new IEP meeting, the DOE was required to provide parents with prior written notice stating their reasons to propose to take or refuse to take actions in relation to E.B. (8 NYCRR §200.5(a)).

36. Here, the DOE failed to issue a PWN stating that they reviewed the parents' request and refused to initiate or change the identification, evaluation or educational placement of E.B., thereby denying E.B.'s right to a FAPE. As a result, the Prong I findings should be reversed.

37. On August 15, 2023, the parents reiterated their dissatisfaction with the DOE's proposed special education program and placement via a letter from their attorney, which, *inter alia*, "request[ed] that the CSE contact them immediately to address the above issues and provide an appropriate program and placement to [E.B.] prior to the beginning of the school year…" Ex. B at 2.

38. The SRO further erred in determining that E.B.'s IEP was appropriate for her for the 2023-2024 school year. Ex. *1 at 10.

39. While the SRO recognized that the DOE bears the burden of proof to establish the appropriateness of the IEP (Ex. *1 at 7), the SRO did not hold the District to its burden. It was incumbent upon the DOE to establish and explain, *inter alia*, how an IEP is reasonably calculated to enable the child to make appropriate progress in light of his circumstances (*Endrew F. v. Douglas County School Dist.*, 580 U.S. RE-1, 137 S. Ct. 988 (2017)). Although the DOE bore the burden of production, it presented no evidence to explain how the terms of the IEP were reached insofar as E.B.'s needs are concerned. This failure deprived the Parents of an opportunity to inquire about, and receive, a cogent explanation for the DOE's actions in regard to their child's educational program and left a record, consisting solely of a series of unexplained documents that the Hearing Officer and SRO were left to page through (*see Endrew F.* 137 S.Ct. at 1002).

40. The SRO incorrectly found that "despite gaps in its presentation, the district presented sufficient documentary evidence to sustain its burden of proof." (*1 at 11).[5] The SRO did precisely what the Court in *L.O. v. N.Y.C. Dep't of Educ.,* 822 F.3d 95 (2d Cir. 2016) forbade and that is to speculate many months later as to how the CSE reached the terms of the child's IEP and which, if any, evaluative materials the CSE considered. This was legally improper.

41. The documentary evidence does not clearly indicate what documents the CSE used to develop the IEP and in fact, an evaluation listed on the Prior Written Notice ("PWN") was not admitted into evidence and it is unclear how, if at all, it was considered at the IEP meeting or supported in the ultimate program recommendation. Ex. 8-1.[6]

42. Additionally, the SRO mistakenly states that "the prior written notice dated March 7, 2023 explicitly states which materials the CSE used to develop the student's IEP." Ex. *1 at 11.

43. The Prior Written Notice states that four evaluations were considered at the March 1, 2023 IEP meeting, a Social History report, a Psychoeducational Assessment, Classroom Observations, and a Neuropsychological evaluation. Ex. 8-1.

---

[5] The hearing record include a series of blank documents entitled "social history package"(Ex. 1-1 through 1-16); a social history evaluation which documents concerns of the parents regarding E.B.'s history of academic struggles since kindergarten, her struggles to sustain attention, and how her academic struggles are a huge source of anxiety for E.B. (Ex. 1-19); a classroom observation which highlights E.B. walking around the ICT classroom instead of engaging, E.B. arguing with peers during a small group activity, and the teacher having to remove E.B. from the group activity (Ex. 3); a notice of the IEP meeting (Ex. 4); a signed consent for initial provision of services (Ex. 7); a Prior Written Notice which merely regurgitates the IEP's program recommendations (Ex. 8); an email from the parent requesting the removal of counseling from the IEP (Ex. 10); and the resulting documentation of the removal of counseling (Exs. 11, 12). The record is barren of any teacher progress reports or report cards.

[6] The PWN lists a 2/6/23 psychoeducational assessment (Ex. 8-1). This "assessment" was neither introduced into evidence at the hearing nor referenced within the IEP. The IEP references the review of "teacher reports" (Ex. 5-1); however, these reports were not introduced into evidence at the hearing.

44. While the Parents entered the referenced Neuropsychological evaluation for the record, neither party offered the DOE's evaluation.

45. Further, while the IEP itself references that "teacher reports" were reviewed in developing the IEP, the Prior Written Notice does not state that these reports were used to develop the student's IEP and neither party introduced these reports for the record. *Cf.* Ex. *1 at 11 with Ex. 5-1 and Ex. 8-1.

46. The SRO improperly endorsed the goals and management needs contained in the IEP as sufficient to address E.B.'s needs (*1 at 14-16). The parents makes specific allegations that the management needs were insufficient to support E.B.; that they did not address all issues discussed at the IEP meeting; and that the recommended goals failed to address E.B.'s deficits, failed to specify a baseline of functioning, and were not achievable as E.B. was not meeting the IEP goals in the recommended program (Ex. A-2). Without a witness to address these issues raised, the District cannot sustain its burden by introducing the very same IEP that the parents dispute and is not, as a baseline, responsive to the parent's allegations.

47. The SRO erroneously found that recommended program on the IEP was "closely aligned with the private neuropsychologist's January 2023 findings and recommendations." (*1 at 18). In making this determination, the SRO simply ignored the full recommendations of the private neuropsychological evaluation and the sworn testimony of the evaluator at the hearing (Exs. C; M). The evaluator specifically acknowledged that E.B. had already been informally receiving an ICT class and supports, and that due to her lagging academic skills, she now required a classroom with a small student to teacher ratio and the additional services of small group instruction with an OG provider or SETSS on a daily basis to target her language-based skill development (Exs. C-14; M-4).

48. There was no information contained in the IEP or other District documents which explains why the CSE did not consider more services for the student as was being recommended and the District presented no witness to provide any explanation as to why the program recommended was reasonably calculated to meet E.B.'s needs. Rather than a clear and cogent explanation from the District as to why it did not consider or provide these additional services, the SRO was forced to speculate as to why the District's CSE did not recommend these additional services. *See* Ex. *1 at 17-18.

49. The SRO committed error when he refused to consider the results of the summer 2023 reevaluation in determining the appropriateness of the IEP. *See* Ex. *1 at 18.

50. The SRO committed legal error when he failed to consider the testimony of the evaluator that E.B. "had largely displayed a lack of meaningful progress and in some cases, had evidenced regression since my previous assessment despite interventions that had been provided inside and outside of school." Ex. M at 4.

51. The SRO committed legal error when he failed to consider the testimony of the Parent that "at the end of her second-grade year, [E.B.] was still below grade level is reading, writing and math, was still having a difficult time paying attention in class and keeping up with the pace of the work, and continued to show signs of anxiety regarding her academic difficulties." Ex. N at 3.

52. The SRO did not reach the questions of whether the Windward School was an appropriate placement for E.B. or whether the equities favored E.B.'s parents.

## First Claim for Relief
### (Denial of FAPE in Violation of the IDEA)

53. Plaintiffs repeat and reallege the allegations stated in paragraph 1 through 52 as if fully set forth herein.

54. In violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, Defendants denied E.B. a FAPE for the 2023-2024 academic year. Such denial results from the substantive inadequacies in the IEP and the proposed placement, as described above or as otherwise may be established.

## Second Claim for Relief
### (Denial of Rights Under Section 504 of the Rehabilitation Act)

55. Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 52 as if fully set forth herein.

56. By failing to confer the benefits provided to E.B. under the IDEA as amended (20 U.S.C. § 1400 *et seq.*), Defendants have violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the regulations promulgated thereunder.

## Third Claim for Relief
### (Denial of Rights Under New York State Law)

57. Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 52 as if fully set forth herein.

58. Defendants have violated Article 89 (N.Y. Educ. Law § 4400 *et seq.*) and regulations promulgated thereunder by failing to provide E.B. with a FAPE as set forth above or otherwise is established.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

a. reverse the SRO's October 7, 2024 decision;

b. hold that the DOE failed to provide E.B. with a FAPE for the 2023-2024 school year;

c. determine that the Windward School was an appropriate program for E.B. and conferred meaningful educational benefit upon her during the 2023-2024 school year;

d.determine that the equities support the Parents' request for reimbursement of the costs of the Windward School;

e.order the DOE to reimburse Plaintiffs for costs paid to the Windward School for the 2023-2024 school year;

f.declare that Plaintiffs are the substantially prevailing party;

g.grant leave, pursuant to governing law, to Plaintiffs' counsel to submit a fee application for the purpose of recovering statutory attorneys fees and other recoverable costs incurred at the administrative level, the SRO level, and in this action; and,

h.  grant Plaintiffs any additional relief as the Court deems appropriate.


Dated:  New York, New York
        February 6, 2025

                                                     Respectfully Submitted,

                                                   **SKYER & ASSOCIATES, L.L.P.**

                                                   By:  _____
                                                           JESSE COLE CUTLER, ESQ.
                                                           SKYER & ASSOCIATES, L.L.P.
                                                           142 Joralemon Street
                                                           Brooklyn, NY 11201
                                                          (212) 532-9736
                                                          jcutler@skyerlaw.com

                                                          *Attorneys for E.B.*